UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

        v.                 Case No. 13-CR-155

JEFFREY FELDMAN,

        Defendant.

**REPLY TO GOVERNMENT'S BRIEF IN OPPOSITION TO MR. FELDMAN'S MOTION TO COMPEL DISCOVERY**

The law enforcement privilege is not absolute: when the defendant makes a showing that items claimed under the privilege are needed for and material to preparing a defense, the privilege must yield. *See Dellwood Farms Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1125 (7th Cir. 1997); *see also* Fed. R. Crim. P. 16(a)(1)(E). This burden is not necessarily high, nor should it be, especially in criminal cases where a defendant faces the loss of liberty and where constitutional rights are at stake, including the right to present a complete defense, to confront one's accusers, to compulsory process for obtaining witnesses and other evidence in one's favor, to effective representation by counsel, and to be free from unreasonable government searches and seizures. *See* Docket Entry 25 at 2-3. Because Mr. Feldman has made this showing in his motion to compel, and because the government does not attempt to refute many of his assertions, his motion must be granted and if the government still refuses to disclose the RoundUp program, its

1

user's manual and/or protocols, and its technical specifications[1], then this Court must dismiss the case against Mr. Feldman. *See United States v. Reynolds*, 345 U.S. 1, 12 (1953) and *Roviaro v. United States*, 353 U.S. 53, 61 (1957). For the following reasons, the government's response in opposition is not persuasive and Mr. Feldman's motion to compel must be granted:

### I. Mr. Feldman complied with Local Criminal Rule 16(b).

The government argues that Mr. Feldman failed to comply with Local Criminal Rule 16(b), has tried three times "to circumvent the local rules," and is using "the courts to sidestep the requirements of this district's local rules." Govt. Br. 10-12. This is incorrect. First, Mr. Feldman asked for no court intervention or relief (as to discovery issues) in his motion to designate the case as complex and to extend the time to file pretrial motions. The items of discovery mentioned in that motion were listed only to illustrate to the Court and the government what Mr. Feldman believed he was entitled to and still had not received yet in discovery at that early juncture (September 3rd, 2013, exactly two weeks after the indictment was filed), and were included only to ensure that he made an adequate showing to the Court in support of the motion and to build any needed appellate record should the motion have been denied.

Second, the government is correct that a discovery conference was held on September 10th, 2013 as described in Mr. Feldman's previous filing (*see* Docket Entry 20), and that conference was productive to the extent that it led to the filing of Mr. Feldman's preliminary motion to compel disclosure, which listed several specific items of discovery sought by the defense. But once again, no court intervention was sought and

---

[1] Notably, Mr. Feldman is not trying to compel the disclosure of RoundUp's computer source code- he only wants access to the program itself and any documentation relating to its use and functions.

2

no relief asked for in this motion. The other main reason the meeting and preliminary motion was productive is that it led to the government filing a very detailed, responsive letter that addressed, point by point, the items sought by the defense. *See* Govt. Br. Ex. 4. In that letter, the government identified several items that it asserted were covered by law enforcement privilege, including the RoundUp program, its manual and protocols, and technical specifications. *See id.* Hence, as of November 15th, 2013, the parties had conferred on Mr. Feldman's discovery requests and several additional items were produced by the government, but several were held back under a claim of privilege. There was nothing vague, uncertain, or confusing about Mr. Feldman's requests for the program and supporting documents, and also nothing vague, uncertain, or confusing about the government's claim of privilege. However, out of an abundance of caution, the defense sent an Email to government counsel verifying that it was not producing the program, its manual and protocols, and its technical specifications under a claim of privilege. *See* Govt. Br. Ex. 5. Mr. Feldman asserted that the requested materials were material to and would be helpful in preparing his defense, but the government confirmed it would not disclose the requested materials. *See id.*

By the time Mr. Feldman filed the motion to compel discovery currently pending (which for the first time did ask for court intervention and relief), the parties had met once at a discovery conference, had exchanged correspondence in letters and Emails, and had clearly articulated their respective positions on the disputed discovery to one another but failed to reach an agreement. This process easily satisfies Local Criminal Rule 16(b)'s requirements, and any claim to the contrary is meritless. Even assuming, *arguendo*, that the local rules were somehow violated, it should be noted that "litigants

3

have no right to demand strict enforcement of local rules," *Modrowski v. Pigatto*, 712 F.3d 1166, 1169 (7th Cir. 2013), and the government cites no authority whatsoever for how any violation of the local rules serves as a basis to deny a motion to compel discovery. Because it was clear that the government was never going to agree to turn over the requested materials under a claim of law enforcement privilege, this issue is now properly before the Court for adjudication.

> II. **Mr. Feldman has made his required threshold showing that the requested items are material to and will be helpful in preparing his defense. As such, they are required to be turned over under Fed. R. Crim. P. 16 and governing case law.**

The government argues that because it has represented to the defense that no fake file sharing occurred, no "tagging" was used, no intrusion was made into Mr. Feldman's computer, and that RoundUp has been validated by the MITRE Corporation, that he has not carried his materiality/helpfulness to the defense burden. *See* Govt. Br. at 13-14. It further argues that he has not pointed to any evidence of these activities in this case, and instead relies on "out-of-context quotes from abstract academic articles." *Id*. at 13. Mr. Feldman's response to this is threefold: first, he should not have to rely "solely on the government's word that further discovery is unnecessary," and this Court should not merely defer to its assertions that "discovery would be fruitless." *United States v. Budziak*, 697 F.3d 1105, 1113 (9th Cir. 2012).

Second, Mr. Feldman cited to no "abstract academic articles" in his motion to compel, but did list numerous, concrete ways in which his defense would be hampered and stymied by lack of disclosure (*see* Docket Entry 25 at 8-16), including citations to an affidavit prepared by a competent and well-qualified computer expert, Gerald Grant (whose qualifications and competence the government does not challenge). Mr. Grant

4

and the defense cannot confirm the occurrence of tagging without access to the RoundUp program, regardless of the "volume of forensic evidence" that has been turned over by the government in this case, because tagging can only be confirmed by comparison to information known only to law enforcement (i.e. by examining the RoundUp program itself). *See* Grant Affidavit at 4, ¶ 15.[2]

Third, the government misunderstands its discovery obligations: *any* discovery requested by the defense that is shown to be material to and helpful in preparing a defense must be disclosed; it is not enough that *other* discovery (even if it is voluminous) was disclosed and asserted by the government to be "good enough." By focusing only on possible fake file sharing, tagging, intrusions into non-shared portions of Mr. Feldman's computer and validation studies, the government ignores much (if not most) of the other claims advanced by Mr. Feldman in his motion to compel that establishes his materiality/helpfulness to the defense burden. These include:

1. The requested disclosures are required to challenge the search warrant issued in this case; without them, Mr. Feldman cannot meaningfully test the veracity and basis of knowledge of the program that was used to supposedly match hash values of known child pornography to hash values on his computer, including the extent (if any) that such matches were corroborated by the agents themselves, the degree to which information was gathered through firsthand knowledge, and the manner in which

---

[2] As for the government's offer of an *in camera* review of the MITRE validation study, Mr. Feldman urges the Court, at a minimum, to accept the offer, but first requests that this study be ordered disclosed in discovery along with all the other requested materials. And the government's claim that validation is not required for law enforcement to use certain investigative tools like RoundUp misses the point: Mr. Feldman does not claim it could not be used in the first place, he claims that by not providing it in discovery and denying any access to it at all he is denied all of the rights and possible defenses detailed in his motion to compel.

5

information was presented to the magistrate (based on personal knowledge or through hearsay). *See* Docket Entry 25 at 8-9, 14.

2. He is unable to effectively prepare for cross-examination of government witnesses at trial who used the program to commence the investigation and prosecution against him. *See id*. at 9.[3]

3. He is unable to determine if the program was used properly and therefore is denied potentially key impeachment material for trial. *See id*.

4. He is unable to determine if the logs turned over by the government are accurate or contain significant inconsistencies. *See id*.[4]

5. He is unable to effectively explore what may be a key anomaly in the government's case- that despite his computer supposedly generating a log file that only "high ID" clients can generate, agents were unable to obtain a single-source download from his computer despite what appears to be over 300 attempts. *See id*. at 10, 13.

6. He is unable to determine the amounts and kinds of information collected by the program and used to build the case against him. *See id*. at 10.

7. He is unable to mount potentially significant chain-of-custody and foundational challenges to the evidence that the government intends to introduce against him. *See id*.

---

[3] The government argues that the request for discovery "based on the potential of a *Daubert* hearing is not ripe for review at this time," and that any evidence that is presented by an expert can be challenged by cross-examination. *See* Govt. Br. at 15, n. 7. The government fails to explain how Mr. Feldman can effectively prepare for cross-examination relating to RoundUp in any context when he is denied any access to the program, its manual or protocols or technical specifications. *See* Budziak at 1112.

[4] Mr. Feldman was not even provided the complete log files- they were redacted and it is unknown to him what significance the redactions may have, if any. *See* Govt. Br. Ex. 2 at 4 (Banner Affidavit).

6

8. He is unable to determine what the program did versus what the undercover OCE did, and therefore cannot intelligently determine if he has a viable *Roviaro* motion to disclose the identity of the OCE. *See id*. at 15-16.

By addressing via representations only possible fake file sharing, tagging, intrusions into non-shared portions of Mr. Feldman's computer and validation studies[5], the government ignores the plethora of other concerns raised in Mr. Feldman's motion to compel that demonstrate his need for and materiality of the information requested (and none of these concerns are based on speculative, irrelevant academic articles or out-of context quotes).

Regarding the possibility that RoundUp may violate the Fourth Amendment by intruding into non-shared portions of a computer and/or use technology that is not available to the public to search constitutionally protected areas, there appears to be a disagreement between the expert opinions presented by each side. Mr. Grant believes that RoundUp can force a computer to store information in a non-shared potion of the computer (*see* Grant Affidavit at 4, ¶ 15), where Mr. Erdely states it cannot do this (*see* Erdely Affidavit at 7, ¶ 19). Mr. Grant also believes that RoundUp possesses several features that are not publically available and that may be used to search non-shared portions of a computer (*see* Docket Entry 25 at 12-14), where Mr. Erdely apparently disagrees that many of the features of RoundUp are problematic from a Fourth

---

[5] The government asserts that Mr. Feldman is also requesting "information related to the hash values of the images found on the defendant's computer and hard drives" and "the hash values of the hundreds of thousands of child exploitation images known to law enforcement, but not involved in this investigation." Govt. Br. 15. No citation to Mr. Feldman's motion to compel is offered for this straw man argument, and he hereby states that he is not requesting any such information.

7

Amendment perspective. To the extent that there are disagreements about these Fourth Amendment concerns, the Court may find it necessary to take testimony from each expert to decide whose opinion is more credible to then be able to determine whether the motion to compel has to be granted, at least in part, based upon the claimed need and materiality to raising the Fourth Amendment challenges just discussed.

### III. The law enforcement privilege should not be allowed in this case.

The government concludes its response to Mr. Feldman's motion to compel by arguing that even if he has met his materiality/helpfulness to the defense burden, that his request should still be denied based on a claim of law enforcement privilege. The government cites many cases that it believes supports its position that the requested materials must be withheld under a claim of privilege, but a close examination of these cases reveals that courts almost universally stress the qualified and not absolute nature of the privilege, the need to resolve such claims on a case-by-case basis, and that any claim of privilege can be overcome by an adequate showing of need. *See* cases cited at Govt. Br. 16.

Typical of the holdings of these cases is the first one cited by the government, *United States v. Cintolo*, 818 F.2d 980 (1st Cir. 1987). *Cintolo* found that under appropriate circumstances, the government can claim a privilege against disclosing "sensitive investigative techniques," which in *Cintolo* involved "confidential government surveillance information," or the location of electronic bugs that were hidden in an apartment. *See id*. at 1002. The Court was quick to stress, however, that such a privilege is "a qualified one" that can be overcome by a sufficient showing of need on "a case by case balancing process… controlled by the fundamental requirements of fairness." *Id.*

8

(internal citations omitted). The Court stated that key to evaluating a claim of necessity is "the extent to which adequate alternative means could have substituted" for the requested disclosures. *See id.* at 1003. The defendant in *Cintolo* was not found to have made an adequate showing of need because other means were available to test the reliability of the conversations recorded by the listening devices, and because the defendant was a direct participant in the most critical portions of the conversations, so therefore the reliability of the recordings was not really in question. *See id.* This is in contrast to Mr. Feldman's case, where no alternative means exist to examine the RoundUp program and other requested materials, and several reliability concerns have been raised (as discussed above) and go largely unaddressed by the government.

The government raises the specter that disclosure of the requested materials will "chill law enforcement investigations" and allow offenders to "evade apprehension or to mislead authorities" or "impede future law enforcement investigations." Govt. Br. 17. Few concrete consequences are shown in support of these conclusory statements, however, and those that are offered are tenuous at best. First, the government claims disclosure would reveal "what programs and protocols" offenders should look for to evade law enforcement detection, but this ignores the fact that knowledge of the use of the RoundUp program is already in the public domain and apparently has not led to much evasion as it is successfully used in more and more investigations. Second, the government claims that if hash values were disclosed, offenders could change one pixel of each picture to change the hash value to one that is new and unknown to law enforcement. But Mr. Feldman is not asking for disclosure of known hash values (*see* footnote 5, *supra*), and regardless, offenders could change one pixel of a picture to evade

9

detection without knowing the hash values in the first place, so this is not a valid reason to withhold disclosure of the materials that Mr. Feldman actually is requesting here.

Third and lastly, the government claims disclosing the requested materials to criminals would compromise future investigations. But Mr. Feldman is not asking for disclosure of the requested materials to the criminal world at large, and by making this statement the government completely ignores the graduated options Mr. Feldman suggested were available in his motion to compel: (1) full, unfettered disclosure of the requested materials to his defense team; (2) disclosure pursuant to protective orders; (3) supervised review of the requested materials at a secure site, like the FBI's offices; or (4) in camera review by the Court. *See* Docket Entry 25 at 16-17. By presenting the court with only a binary choice (no disclosure at all or disclosure to the criminal world at large), the government fails to recognize that the privilege to withhold is not absolute, that need for disclosure must be decided on a case by case basis, and that options exist that can balance both the concerns of law enforcement and the needs of Mr. Feldman to adequately defend himself against criminal charges.

The last argument offered by the government for why the law enforcement privilege should be allowed in this case is based on the existence of "a ten-factor balancing test" as laid out in *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973). The government's reliance on this case is misplaced for several reasons. First, the government is incorrect when claiming that "numerous courts" have employed the balancing test laid out in this district court-level decision, unless two courts count as "numerous." Significantly, no Seventh Circuit decision has cited to (much less adopted) the test. Neither have any decisions from the First, Second, Sixth, Eighth, Ninth, Tenth,

10

or Eleventh Circuits. The Third and Fourth Circuits have cited to *Frankenhauser*, but have not adopted the test. It appears that only the Fifth and D.C. Circuits (in the cases cited in the government's brief) have actually ever applied the test in any decisions, and even then only on a few occasions.[6] Second, it appears there is good reason why the vast majority of Circuits have not adopted the test: *Frankenhauser* seemed to limit the use of its own ten-factor test to disputes about disclosing the contents of police investigation files in civil rights cases. *See id*. Implicit in this recognized limitation must be that criminal cases differ fundamentally from civil cases in that the liberty interest of a defendant and constitutional rights are implicated, where in civil cases these concerns are not present and therefore necessarily reduce the need for disclosure of materials that the government claims is privileged.[7]

The third reason the government's citation to *Frankenhauser* is unpersuasive is because the government failed to actually analyze and apply the ten factors to this case. *See* Govt. Br. at 18. This is presumably because some of the factors don't apply in this case, and of those left, they favor disclosure of the requested materials by Mr. Feldman rather than favoring holding them back under a claim of privilege. Mr. Feldman harbors concerns about the appropriateness and applicability of the *Frankenhauser* test to criminal cases like his own, and does not concede that it should be adopted as governing law by any court when evaluating claims of law enforcement privilege, but for the sake of completeness offers the following analysis of the ten factors to aid this Court to whatever extent it may find it useful:

---

[6] It should also be noted that according to Westlaw's KeyCite feature, *Frankenhauser* has received negative treatment from many other federal district courts (18 decisions as of March 27th, 2014).

[7] It should be noted that the *Frankenhauser* Court nonetheless ordered that several of the items requested by the plaintiffs be disclosed by the police defendants who claimed privilege.

11

1. The first factor favors disclosure as disclosure would not "thwart governmental processes by discouraging citizens from giving the government information." RoundUp does not depend on citizens providing it information; rather, it gathers information via computerized automation from p2p networks like eDonkey and KAD.

2. The second factor favors disclosure as disclosure would not have any "impact upon persons who have given information of having their identities disclosed" (unless Mr. Feldman determined he had a viable *Roviaro* motion to bring and the Court granted it- but even then only the identity of an undercover law enforcement agent would be disclosed, not the identity of a citizen-informer).

3. The third factor could arguably favor nondisclosure, as disclosure could conceivably (but Mr. Feldman does not concede) impact "the degree to which governmental self-evaluation and consequent program improvement will be chilled" by it.

4. Because the disclosures sought are factual data and not merely evaluative summaries, disclosure is favored under the fourth factor.

5. Because Mr. Feldman is an actual criminal defendant in a pending criminal case and enjoys all the concomitant constitutional rights that adhere to such a case, disclosure is favored under the fifth factor.

6. Because the police investigation of Mr. Feldman has been completed, disclosure is favored under the sixth factor.

12

Case 2:13-cr-00155-LA-AEG   Filed 04/21/14   Page 12 of 15   Document 33

7. The seventh factor does not appear to apply as Mr. Feldman is not aware of "any interdepartmental disciplinary proceedings [that] have arisen or may arise from the investigation." If there are any, he hereby requests notification and documentation of any such proceedings pursuant to *Brady v. Maryland*, 373 U.S. 83 (1976) and *Giglio v. United States*, 405 U.S. 150 (1972).

8. The eighth factor does not apply as Mr. Feldman is not the plaintiff in this action.

9. The ninth factor favors disclosure because the information sought is not available through other discovery or from other sources.

10. The tenth factor favors disclosure because the importance of the information (i.e. materiality and helpfulness to the defense) is extremely high in this case as described in detail above and in Mr. Feldman's motion to compel.

Seven factors clearly favor disclosure, two do not seem to apply in this case, and only one arguably favors non-disclosure, so to the extent this Court finds the *Franenhauser* test helpful in its decision, it overwhelmingly calls for Mr. Feldman's motion to compel to be granted.

**IV. Conclusion**

The government asserts that this case is not complicated, but it is just that- it involves the government's use of a little-known, law enforcement-only program whose exact capabilities and powers are unknown, except when the governments finds it appropriate to selectively represent what some of those powers and capabilities are. This

13

program was not incidental to the investigation and prosecution of Mr. Feldman; rather, it was at the very center of locating, targeting, and gathering information on him and his computer. It may take actions (either by itself or directed by law enforcement agents) that violate the Fourth Amendment. It was responsible for providing most if not all of the information used by law enforcement to obtain a search warrant for his residence (the exact extent is not known as we do not know what exactly the program did versus the OCE). Despite the central role the program has played in the investigation and prosecution of Mr. Feldman in this very serious federal case that carries the potential for an extremely long prison sentence, the government refuses to allow the defense access in any way, shape or form to the program, its manual or protocols, or its technical specifications. The United States Supreme Court has warned against letting the government have its cake and eat it too- it has embraced the view that the government can invoke evidentiary privilege only at the price of letting the defendant go free. *See Reynolds* at 12.

Mr. Feldman has carried his required burden of showing how the requested disclosures are material to and helpful to his defense, both in regards to potential pretrial motions and at trial. Because the claim of law enforcement privilege is not absolute, and because Mr. Feldman has carried his burden, the government cannot be allowed to continue to withhold the requested materials while maintaining this prosecution. It must choose either disclosure or dismissal, and if it continues to claim privilege in the face of an order to disclose to the contrary, this Court must dismiss the case against him. *See Roviaro* at 61 and *Reynolds* at 12. For all the reasons offered in Mr. Feldman's motion to compel and now this reply, the motion must be granted.

14

Respectfully submitted at Milwaukee, Wisconsin this 21st day of April, 2014.

| | |
|---|---|
| /s/_____<br>Christopher Donovan<br>Bar No. 1055112<br>Pruhs & Donovan, S.C.<br>757 N. Broadway, 4th Floor<br>Milwaukee, WI 53202<br>Tel: 414-221-1950<br>donovanc34@hotmail.com | /s/_____<br>Robin Shellow<br>Bar No. 1006052<br>The Shellow Group<br>324 W. Vine Street<br>Milwaukee, WI 53212<br>Tel: 414-263-4488<br>tsg@theshellowgroup.com |

Attorneys for Jeffrey Feldman

15

Case 2:13-cr-00155-LA-AEG   Filed 04/21/14   Page 15 of 15   Document 33